MARY-LEE SMITH (CA BAR NO. 239086)
(msmith@dralegal.org)
REBECCA WILLIFORD (CA BAR NO. 269977)
(rwilliford@dralegal.org)
FREYA PITTS (CA BAR NO. 295878)
(fpitts@dralegal.org)
SETH PACKRONE (*Pro Hac Vice* Admission Pending)
(spackrone@dralegal.org)
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone: (510) 665-8644
Facsimile: (510) 665-8511

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M.W., by and through her guardian ad litem, HOPE W., and the AMERICAN DIABETES ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE ARMY; ERIC FANNING, Secretary of the Army, in his official capacity; UNITED STATES ARMY FAMILY AND MORALE, WELFARE AND RECREATION PROGRAMS; and UNITED STATES ARMY CHILD, YOUTH AND SCHOOL SERVICES.<br><br>Defendants. | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794** |

**INTRODUCTION**

1. Plaintiffs M.W.[1] and the American Diabetes Association ("Association"), by and through their counsel, Disability Rights Advocates, bring this Complaint against Defendants United States Department of the Army ("DOA"), United States Army Family and Morale, Welfare and Recreation Programs ("MWR"), United States Army Child, Youth and School Services ("CYSS"), and Eric Fanning, the Secretary of the Army, in his official capacity (collectively "Defendants"), who own, operate, maintain and/or control CYSS programs and activities.

2. This lawsuit challenges Defendants' discriminatory blanket policy prohibiting the provision of critical diabetes-related care for children with diabetes who are otherwise eligible to participate in CYSS programs and activities. In so doing, this lawsuit seeks to end these egregious civil rights violations committed by Defendants against M.W., and other children with diabetes nationwide who are eligible for CYSS programs and activities, including Association members and Association members' children, who want to participate in CYSS programs and activities, but cannot do so without diabetes-related care.

3. CYSS, a division of MWR, operates a range of programs and activities for eligible families' children on military bases around the country. CYSS offers programs and activities for children of all ages, including daycare services, in-home childcare programs, school-age and teen programs, summer camps, and youth sports.

4. According to the CYSS section of the MWR website, CYSS operates these programs and activities because it "recognizes the challenges of our Soldiers and their Families" and CYSS seeks to "reduc[e] the conflict between mission readiness and parental responsibility." For many families, CYSS fulfills its mission, providing critical childcare services and quality

---

[1] Plaintiffs are redacting Plaintiff M.W.'s name pursuant to Federal Rule of Civil Procedure 5.2(a) ("in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor, . . . a party or nonparty making the filing may include only . . . (3) the minor's initials[.]") Plaintiffs are concurrently filing under separate cover a motion to file under seal M.W.'s application for appointment of a guardian ad litem and for her guardian ad litem to proceed using a fictitious name.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   programs for children and teens. Yet for families who need support more than others—families
2   of children with diabetes—CYSS denies this support.

3        5.     United States Army Regulation 608-10 and a MWR 2008 memorandum, which
4   interprets Army Regulation 608-10 (together, "Defendants' policy"), prohibits CYSS personnel
5   from providing a range of critical diabetes-related care to children with diabetes, including
6   counting carbohydrates, giving injections of insulin, monitoring a child's insulin pump, and
7   administering a potentially lifesaving glucagon injection.

8        6.     Due to Defendants' policy, children with diabetes cannot safely attend CYSS
9   programs and activities, because without assistance in monitoring and responding to blood
10  glucose levels, a child with diabetes can experience hypoglycemia or hyperglycemia, both of
11  which are medical conditions that can lead to extreme and incapacitating symptoms if not
12  addressed. Thus, children with diabetes are effectively denied and excluded from all CYSS
13  programs and activities.

14       7.     Since the issuance of the MWR 2008 memorandum, the standard of care for
15  children with diabetes in childcare related programs and activities has progressed and in turn
16  resulted in greater access for children with diabetes to these types of programs and activities.
17  Many other organizations that run childcare related services, including daycares, summer camps,
18  and schools, offer essential diabetes-related care to children with diabetes in compliance with
19  their civil rights obligations.

20       8.     Plaintiff M.W., a six-year-old child with type 1 diabetes, cannot safely attend her
21  local CYSS programs and activities due to Defendants' refusal to provide diabetes-related care.
22  Because of her type 1 diabetes and young age, M.W. requires assistance in managing her
23  diabetes—assistance CYSS personnel cannot provide because of Defendants' policy.

24       9.     Plaintiff American Diabetes Association is a membership organization whose
25  members include families and individuals affected by Defendants' policy, including M.W.'s
26  mother. The Association has expended resources in meeting with Defendants to discuss their
27  policy and assisting those affected by Defendants' policy.
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

10. By refusing to provide children with diabetes the necessary diabetes-related care, CYSS denies M.W. and other children with diabetes who are eligible for programs and activities, including Association members and Association members' children, access to CYSS programs and activities nationwide on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504").

11. M.W.'s mother first informed CYSS about M.W.'s diabetes diagnosis and medical needs in June 2015. Throughout the next few months, M.W.'s mother communicated extensively with CYSS via telephone, email, and in-person meetings to continue advocating for her daughter's inclusion. In response, CYSS notified her that its personnel cannot provide adequate care for M.W. to safely attend CYSS programs and activities. Since May 31, 2016, M.W.'s mother, through her counsel, has attempted to resolve this issue through negotiations with Defendants so M.W. could attend CYSS's after-school program starting in August 2016. Defendants failed to adequately respond.

12. The Association has been working on issues related to this policy since they initially met with Defendants about it in 2010. The Association has received numerous intake calls from members and other families who have been affected by Defendants' policy. The Association expended resources to offer guidance to each affected family about their rights and Defendants' legal obligations to provide diabetes-related care.

13. This lawsuit seeks to put an end to this ongoing discrimination by requiring Defendants to meet their legal obligation to provide M.W. and other children with diabetes, including Association members and Association members' children who are eligible for CYSS programs and activities, with the critical diabetes-related care they need to safely attend CYSS's programs and activities.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

14. This is an action for declaratory and injunctive relief brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising out of Section 504.

16. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

17. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1)(B)-(C) because: (1) a substantial part of the events or omissions giving rise to the claim occurred within the District and (2) Plaintiff M.W. resides within the District and the Association has members who reside in the District, and no real property is involved in the action.

18. Pursuant to the Northern District of California's Civil Local Rule 3-2(c)-(e), because M.W. resides in and a substantial part of the events giving rise to Plaintiffs' claims occurred in Monterey County, the intradistrict assignment should be to the San Jose Division.

**PARTIES**

19. Plaintiff M.W. is a six-year-old child with type 1 diabetes. She is a person with a disability under all applicable statutes. M.W. is eligible to attend CYSS programs and activities at the Presidio of Monterey because her parent's employer, California State University-Monterey Bay ("CSU-MB"), has a memorandum of understanding ("MOU") with the Presidio of Monterey that allows CSU-MB employees to send their children to CYSS programs and activities.

20. M.W. had been enrolled in the after-school program at the Presidio of Monterey's Porter Youth Center ("Porter Youth Center"), operated by CYSS, for the 2014-2015 school year and planned to continue attending the following school year. However, due to M.W.'s new diabetes diagnosis in June of 2015, M.W.'s mother was informed that, per Defendants' policy, CYSS personnel are not authorized to provide the diabetes-related care that M.W. needs to safely participate in CYSS programs and activities. This policy prevented M.W. from attending CYSS programs and activities for the 2015-2016 school year, and this policy continues to prevent M.W. from enrolling in CYSS programs and activities for the upcoming 2016-2017 school year.

21. Organizational Plaintiff American Diabetes Association is a nationwide, volunteer non-profit membership organization with the mission of preventing and curing diabetes and improving the lives of all people affected by diabetes. The Association has approximately 485,000 general members, 15,000 health professional members, and a network of over 1 million

volunteers. Founded in 1940, the Association is now the largest voluntary health organization addressing issues around diabetes.

22. To accomplish its goal of preventing and curing diabetes, the Association takes a range of actions, including advocacy for increased funding for diabetes research and publishing the most authoritative professional journals on the subject of diabetes research and treatment. The Association pursues its goal of improving the lives of all people affected by diabetes through its community programs for children with diabetes, its advocacy for policies and laws to keep children with diabetes safe at school, including developing a training module for child care staff, and providing legal information and assistance to families and individuals experiencing diabetes-related discrimination. Accordingly, the interests that the Association seeks to protect through this litigation are germane to its mission and purpose.

23. The Association's advocacy and direct service work is based on a close association with its members and volunteers. Many of the Association's members and volunteers are people with diabetes, their families and caregivers, or professionals that work in the field of diabetes. As persons with diabetes, one or more members of the Association are suffering injury due to Defendants' policy and refusal to provide diabetes-related care that children with diabetes need to safely attend CYSS programs and activities. Accordingly, one or more of the Association's members have standing to sue in their own right. Moreover, since only injunctive and declaratory relief are requested, the participation of individual members in the lawsuit is not required.

24. Furthermore, the Association is directly harmed by Defendants' policy. Because of this policy, the Association has expended resources to provide guidance to affected families, including time spent researching the legal and health issues presented by the families and advising them accordingly. In addition, Defendants' policy frustrates the mission of the Association.

25. Defendants United States Department of the Army, United States Army Family and Morale, Welfare and Recreation Programs, United States Army Child, Youth and School Services, and Eric Fanning own, operate, maintain and/or control CYSS's programs and

1 activities that fail to provide adequate diabetes-related care to M.W. and other children with
2 diabetes who are eligible for CYSS programs and activities.

3     26.     Defendant United States Department of the Army ("DOA") is the United States
4 federal agency responsible for the programs and activities conducted on United States Army
5 military bases. DOA is a component of the United States Department of Defense.

6     27.     Defendant Eric Fanning is the Secretary of DOA (the head of a United States
7 Department of Defense ("DOD") Component) and is sued in his official capacity.

8     28.     Defendant United States Army Family and Morale, Welfare and Recreation
9 Programs ("MWR") is a division of DOA that operates a variety of programs and activities,
10 including CYSS, to support the military and eligible civilian families.

11     29.     Defendant United States Army Child, Youth and School Services ("CYSS") is a
12 division of MWR and operates programs and activities for eligible families' children on military
13 bases, including daycare services, before and after-school care, and summer camps.

14 **FACTUAL ALLEGATIONS**

15 *The Necessary Care for Children with Type 1 Diabetes is Well-Established.*

16     30.     Type 1 diabetes is a chronic and incurable disease of the endocrine system. It is
17 characterized by the body's inability to produce insulin. Insulin is the hormone that regulates the
18 amount of glucose in the blood. Glucose is the body's main energy source. Thus, failure to
19 produce insulin deprives the body of glucose and, as a result, energy. Insulin is necessary to
20 sustain life, and thus people with type 1 diabetes must receive insulin injections to help regulate
21 their glucose and energy levels. Insulin can be delivered through either an injection or an insulin
22 pump.

23     31.     The amount of insulin a child with type 1 diabetes needs is affected by numerous
24 variables, including but not limited to age, body mass index, the amount of carbohydrates the
25 child consumes, activity levels, illness, and other medications the child is taking. Balancing
26 carbohydrate intake and insulin levels is critical to avoiding diabetes complications. Children
27 often need assistance in counting carbohydrates to ensure their insulin dosage is correct.
28 Children also need assistance monitoring their glucose levels.

1  32. When the glucose levels of a child with type 1 diabetes get too low, a condition called hypoglycemia results. If left untreated, hypoglycemia can lead to seizures, unconsciousness, and even death. At the point of severe hypoglycemia, someone must inject the child with glucagon, a potentially lifesaving hormone that causes the liver to release glucose reserves into the child's bloodstream. Glucagon may be required regardless of age, and the medication cannot be self-administered, because it is only given when a person is unresponsive. So regardless of how old M.W. becomes, she will always have the potential to need a dose of glucagon.

33. While the specifics of care for each child with type 1 diabetes may vary based on factors including but not limited to age and complexity of regimen, these necessary treatments for managing type 1 diabetes are well-established. M.W. requests only this routine level of diabetes-related care.

***CYSS's Blanket Policy Discriminates Against Children and Youth with Diabetes.***

34. CYSS operates a range of programs and activities for the children of eligible families, including daycare services, in-home childcare programs, school-age and teen programs, summer camps, and youth sports on military bases around the country.

35. For military and eligible civilian families, CYSS provides high quality childcare options. For families working and living on military bases in remote areas, CYSS often provides the only childcare option.

36. While CYSS programs and activities are explicitly intended to support and assist with parental responsibilities for eligible families, the current policy excludes families who need support more than others —families of children with diabetes.

37. The 2008 MWR memo entitled "Care of Diabetic Children and Youth within Army Child, Youth & School (CYS) Services," interpreting Defendants' Army Regulation 608-10, states that "CYS Services is not authorized to" provide the following diabetes-related care to children with diabetes: "(1) Count carbohydrates; (2) Give injections of insulin to include manipulation of the insulin pump which is an alternate method of delivering insulin; (3) Give

injections of Glucagon, a rescue medication." Under Defendants' policy, CYSS is allowed to assist in glucose level monitoring but has nonetheless refused to do so for M.W.

38. Defendants' policy explicitly relies upon two outdated settlement agreements reached under the Americans with Disabilities Act between the United States Department of Justice ("DOJ") and two private childcare centers, KinderCare Learning Centers (1996) and La Petite Academy (1997).

39. In the almost 20 years since these settlement agreements were finalized, the DOJ has settled numerous matters requiring even more substantial supports for children with diabetes. In fact, during this time, the DOJ has consistently required that childcare centers and camps provide the same supports that M.W. now seeks from CYSS. The landscape for diabetes-related care has evolved, and as such, many other organizations that offer programs and activities for children provide essential diabetes-related care to children with diabetes.

40. CYSS's refusal to give injections of insulin or even assist with an insulin pump as well as count or monitor children's carbohydrate levels places children with type 1 diabetes in danger. Additionally, CYSS's refusal to administer the rescue medication glucagon to children with type 1 diabetes in the event of severe hypoglycemia compounds the danger children with type 1 diabetes in CYSS's care already face.

41. Viewed in its entirety, Defendants' policy is terrifying for families of children with type 1 diabetes. CYSS personnel are not able to deliver potentially lifesaving medication to a child experiencing severe hypoglycemia, nor can they assist the child through routine carbohydrate counting and insulin administration necessary to prevent high blood sugar, or hyperglycemia.

42. Although the specifics of the care that each child with diabetes needs varies according to individual circumstances, CYSS's blanket refusal based on Defendants' policy prohibiting staff from performing or assisting with these functions endangers every child with diabetes in their care.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

43. By failing to provide diabetes-related care, CYSS excludes children with diabetes from its programs and activities and denies them equal access to the benefits of its array of programs and activities solely because of their disabilities.

### *CYSS's Policies Have Caused Harm to Plaintiff M.W.*

44. M.W., a six-year-old child with type 1 diabetes, has been denied and continues to be denied equal access to the benefits of CYSS programs and activities solely because of her disability.

45. M.W. requires the following diabetes-related care: glucagon administration, supervision of blood glucose testing and appropriate response to high or low blood glucose levels, assistance with the administration of insulin using an insulin pump, carbohydrate counting, and monitoring of her food intake.

46. M.W. is eligible to attend CYSS programs and activities at the Presidio of Monterey because her parent's employer, CSU-MB, has an MOU with the military base that allows CSU-MB employees to enroll their children in these programs and activities.

47. M.W. attended the Presidio of Monterey's Child Development Center until kindergarten when M.W. started attending the Porter Youth Center's after-school care program. CYSS operates both of these programs.

48. Because the Porter Youth Center is located across the street from M.W.'s school, CYSS staff pick up the children immediately after school. At the after-school program, M.W. would have a snack, do homework with the assistance of staff, and then participate in age-appropriate activities. Because the Porter Youth Center draws children from more than one school, M.W. was able to make friends there that she would not otherwise meet at school.

49. On June 14, 2015, when school was out for summer vacation, M.W. was diagnosed with type 1 diabetes after a health crisis landed her in the emergency room.

50. Wanting M.W. to continue to attend the Porter Youth Center's after-school program when school started in August, M.W.'s mother contacted CYSS on June 22, 2015 and explained that M.W. had been diagnosed with type 1 diabetes. Over the next few months until approximately September 30, 2015, M.W.'s mother communicated extensively via telephone, e-

mail, and in-person meetings with CYSS personnel to advocate for her daughter's return to the CYSS programs and activities at the Porter Youth Center.

51. For example, on July 22, 2015, M.W.'s mother attended a meeting with CYSS personnel to explain the diabetes-related care that M.W. would need to attend the Porter Youth Center's after-school program. At the time, M.W. still needed injections of insulin and would not be able to use an insulin pump for several months. CYSS personnel indicated at the meeting that they could not administer glucagon to M.W. in an emergency situation but informed M.W.'s mother that they might make an exception for M.W. CYSS did not provide a specific date for a final decision.

52. On August 27, 2015, M.W.'s mother provided individualized training and a scenario sheet for CYSS staff instructing them how to provide diabetes-related care to M.W.

53. On August 31, 2015, CYSS staff wrote to M.W.'s mother that "ANY United States Army Garrison that allows CYSS staff to administer glucagon is in direct violation" of Army regulations, and while "AR 608-10 is very old" and has been "under revision" for almost three years, a revision "is not expected to be released for another 5 years."

54. In addition to refusing to administer glucagon, CYSS also refused to provide other necessary diabetes-related care to M.W. CYSS would not interpret the results on her blood glucose monitor, they would not administer insulin injections, and the Army's policy would not allow CYSS staff to assist M.W. with using an insulin pump. While CYSS would provide a low carbohydrate snack, they would not count carbohydrates for M.W. and initially refused to give M.W. anything when she became hypoglycemic, including orange juice, because they claimed it constituted giving medication.

55. Not willing to risk M.W.'s safety with the nonexistent diabetes-related care at CYSS, M.W.'s parents decided to seek alternative after-school care for her in October 2015.

56. M.W.'s parents have been unable to find an appropriate alternative program for M.W. She stays at home after school with M.W.'s father, who works from home. This interferes with M.W.'s father's ability to complete his work.

57. Not only was M.W. deprived of attending CYSS programs and activities and interacting with the friends she made there, but being excluded because of her diabetes, M.W. was devastated because she feared that the adults she had come to depend on in her after-school program no longer cared about her. Through January and February 2016, M.W. frequently asked her parents when she could return to the Porter Youth Center.

58. On April 14, 2016, M.W.'s mother contacted CYSS staff to ask if there were any changes to Defendants' policy. CYSS staff wrote back with the same non-answer they had provided almost one year earlier: "There is no official modification to our current glucagon policies. . . . This issue glucagon [*sic*] is at our highest headquarters for consideration."

59. On May 31, 2016, M.W. renewed her demand for a modification of Defendants' illegal policy that would allow CYSS staff to provide essential diabetes-related care to M.W., when included in a medical action plan prepared by her health care provider.

60. On June 20, 2016, MWR staff informed M.W. that Defendants' policy "is under revision" and "[u]ntil that policy is revised, each case presented is reviewed on the individual circumstances of the child." Based on CYSS staff's own description, Defendants will continue to evaluate whether each child with diabetes should be given an exception to its illegal policy for another four years – the time remaining since the 2015 email indicating the review would last five years. MWR also renewed the United States Army's offer to evaluate M.W. for "an exception" to Defendants' policy.

61. More than one year after initially raising the issue with Defendants, M.W. has received no assurances that she will be able to safely participate in CYSS programs and activities. Defendants have refused to modify their policy and continue to evaluate M.W. for "an exception" to Defendants' policy.

62. Even if an exception were granted for M.W., it could be revoked at any time at the whim of Defendants, given that the formal policy is still under review, and will continue to be so for an estimated four more years. M.W. will remain at risk of exclusion from CYSS programs and activities while Defendants' policy remains in flux.

*CYSS's Policies Have Caused Harm to Plaintiff American Diabetes Association and Its Members.*

63. The Association has approximately 485,000 general members. These members include individuals who have been affected by Defendants' policy. Thus, one or more of the Association's members have been injured as a direct result of Defendants' policy and would have standing to sue in their own right. The Association can bring this action on behalf of itself and its members because the interests at stake are germane to the Association's purpose. Additionally, Plaintiffs' claims are limited to injunctive and declaratory relief which do not require the participation of individual members in the lawsuit.

64. The Association is directly harmed by Defendants' policy and failure to provide diabetes-related care so children with diabetes can safely attend CYSS programs and activities. The Association has dedicated resources to addressing this issue since at least 2010 when they prepared for and attended a telephonic meeting with Defendants to discuss Defendants' policy. Additionally, the Association has expended resources fielding intake calls from people who are harmed or at risk of being harmed by Defendants' policy, conducting legal and health-related research for the intakes, and then communicating their findings over the phone or via email. The Association has received a wide range of intakes from families harmed by Defendants' policy from across the country, including for children between the ages of three and nine seeking to attend CYSS summer camps, pre-schools, and before and after-school care programs. As a result of Defendants' policy, the Association has fewer resources to dedicate to its other programs. This injury to the Association is ongoing and would be directly redressed by injunctive and declaratory relief. In addition, each act of discrimination caused by Defendants' policy directly frustrates the Association's mission of improving the lives of all people affected by diabetes.

//
//
//
//

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

## (29 U.S.C. § 794)

## (Discrimination in Aid, Benefit or Service)

65. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

66. Section 504 of the Rehabilitation Act provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . ." 29 U.S.C. § 794(a).

67. Section 504 requires the head of every executive agency to promulgate regulations as shall be necessary to carry out the Act. 29 U.S.C. § 794(a).

68. The Department of Defense's Section 504 regulations provide that "[n]o qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefit of, or otherwise be subjected to discrimination under any program or activity that is conducted by the Department of Defense or that receives or benefits from Federal financial assistance disbursed by the Department of Defense." 32 C.F.R. § 56.8(a)(1).

69. The statute and applicable regulation defines an "individual with a disability" as an individual who has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102); *see also* 32 C.F.R. § 56.3(c).

70. M.W. is an individual with a disability within the meaning of the statute in that she has type 1 diabetes, an impairment that substantially limits a major bodily function by affecting the functioning of her endocrine system and substantially affects the major life activities of eating and caring for oneself. The Association has members who have diabetes and who, like M.W., are individuals with disabilities.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

71. To be qualified, an individual must "meet the essential eligibility requirements for receiving the services in question." 32 C.F.R. § 56.3(f)(2).

72. M.W. has reason to and is otherwise eligible to participate in Defendants' after-school care program at the Porter Youth Center. Indeed, prior to her diabetes diagnosis, M.W. attended the Porter Youth Center's after-school care program. The Association also has members and children of members who are eligible for and would still like to participate in CYSS programs and activities.

73. As entities with programs and activities that receive or benefit from federal financial assistance distributed by the Department of Defense or are conducted by the Department of Defense, Defendants must comply with the requirements of Section 504. *See* 29 U.S.C. § 794; 32 C.F.R. pt. 56 & § 79.5(c)(18); Department of Defense Directive No. 1020.1. CYSS programs and activities have received this assistance or have been conducted by the Department of Defense at all relevant times to the claims asserted in this Complaint.

74. The Department of Defense's regulations codifying prohibitions against discrimination bar Defendants, in providing any aid, benefit, or service, "directly or through contractual, licensing, or other arrangements, on the basis of handicap," from:

    a. "Deny[ing] a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service," 32 C.F.R. § 56.8(a)(2)(ii);

    b. "Afford[ing] a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," 32 C.F.R. § 56.8(a)(2)(iii);

    c. "Provid[ing] a qualified handicapped person with an aid, benefit, or service that is not as effective as that afforded to others," 32 C.F.R. § 56.8(a)(2)(iv); or

    d. "Otherwise limit[ing] a qualified handicapped person in the enjoyment of any right, privilege, advantage or opportunity granted to others receiving the aid, benefit, or service," 32 C.F.R. § 56.8(a)(2)(v).

75. Defendants' blanket policy prohibiting necessary diabetes-related care (1) results in denial to children with diabetes of the opportunity to participate in and to benefit from the

programs and activities that CYSS offers; (2) affords an unequal opportunity to participate in or benefit from the programs and activities of CYSS; (3) provides a wholly ineffective aid, benefit or service that CYSS offers to children with diabetes as compared with those without diabetes; and (4) otherwise limits children with diabetes in the enjoyment of the opportunity to participate in CYSS programs and activities—all because the only way in which children with diabetes can participate in or benefit from CYSS programs and activities is if they risk their health, and even their lives. Defendants and their agents and employees have violated and continue to violate Section 504 and the regulations promulgated thereunder by discriminating against M.W., Association members, and Association members' children solely by reason of their disabilities. The only reason that M.W., Association members, and Association members' children cannot participate in Defendants' CYSS programs and activities is because they refuse to provide necessary support to children with disabilities, thus risking their lives due to their disabilities.

76. As a direct and proximate cause of the aforementioned acts, M.W. and the Association and its members have been and continue to be injured.

77. M.W. and the Association and its members have no adequate remedy at law. Unless the relief requested herein is granted, M.W., Association members, and Association members' children will suffer irreparable harm in that they will continue to be discriminated against and denied access to CYSS programs and activities. Furthermore, unless the relief requested herein is granted, the Association will suffer irreparable harm in that Defendants' policy will continue to force the Association to spend resources and continue to frustrate the Association's mission.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

## (29 U.S.C. § 794)

## (Discrimination in Methods of Administration)

78. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

79. The DOD Section 504 regulations also prohibit Defendants from "us[ing], directly or through contractual or other arrangements, criteria or methods of administration that: (i) Subject qualified handicapped persons to discrimination on the basis of handicap; [or] (ii) Defeat or substantially impair accomplishment of the objectives of the recipient's or DOD Component's program or activity with respect to handicapped persons. . . ." 32 C.F.R. § 56.8(a)(6)(i)-(ii). Defendants' methods of administration as they relate to CYSS include a blanket policy that prohibits diabetes-related care to children with diabetes. Such methods of administration have the effect of subjecting M.W., Association members, and Association members' children to discrimination on the basis of disability because the blanket policy effectively bars M.W. and other children with diabetes who are eligible for CYSS programs and activities, including Association members and Association members' children, from participation in CYSS programs and activities. In addition, the methods of administration defeat accomplishment of the objectives of CYSS programs and activities with respect to M.W. and other children with diabetes who are eligible for CYSS programs and activities, including Association members and Association members' children, because, due to the blanket policy, M.W. and other children with diabetes who are eligible for CYSS programs and activities, including Association members and Association members' children, cannot participate in or benefit from the CYSS programs and activities without risk to their health and lives. Furthermore, Defendants' methods of administration have most recently included refusal to modify their policy or, at minimum, to offer assurances that the policy will change. Such a position has the effect of subjecting children with diabetes to discrimination on the basis of disability and defeating the accomplishment of the objectives of the CYSS programs and activities for the same reasons detailed above.

80. As a direct and proximate cause of the aforementioned acts, M.W. and the Association and its members have been and continue to be injured.

81. M.W. and the Association and its members have no adequate remedy at law. Unless the relief requested herein is granted, M.W., Association members, and Association members' children will suffer irreparable harm in that they will continue to be discriminated

*M.W., et al. v. United States Department of the Army, et al.*  16
**Complaint for Injunctive and Declaratory Relief**

against and denied access to CYSS programs and activities. Furthermore, unless the relief requested herein is granted, the Association will suffer irreparable harm in that Defendants' policy will continue to force the Association to spend resources and continue to frustrate the Association's mission.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## THIRD CAUSE OF ACTION
## DECLARATORY RELIEF

82. Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

83. An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe, that Defendants deny that, by prohibiting the provision of critical diabetes-related care for children with diabetes who are eligible to participate in CYSS programs and activities, Defendants fail to comply with applicable laws, including but not limited to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

84. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for judgment as follows:

1. A declaration that Defendants' CYSS programs and activities are being operated in a manner that discriminates against M.W. and all other children with diabetes who are eligible for CYSS programs and activities, including Association members and Association members' children, and that Defendants' CYSS programs and activities fail to provide access for M.W. and all other children with diabetes who are eligible for CYSS programs and activities, including Association members and Association members' children, as required by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

2. An order and judgment enjoining Defendants from violating Section 504 of the Rehabilitation Act and requiring Defendants to immediately develop and implement a policy

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

governing the care of children with diabetes within CYSS programs and activities. The policy would direct CYSS personnel to provide diabetes-related care including but not limited to counting carbohydrates, monitoring and administering insulin, and administering glucagon when it is included in a medical action plan prepared by a child's health care provider, to allow M.W. and all other children with diabetes who are eligible for CYSS programs and activities, including Association members and Association members' children, to safely participate in CYSS programs and activities;

    3.    Plaintiffs' reasonable attorneys' fees and costs; and

    4.    Such other and further relief as the Court deems just and proper.

DATED: July 19, 2016        Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

*/s/ Mary-Lee K. Smith*

_____
Mary-Lee K. Smith
Rebecca Williford
Freya Pitts
Seth Packrone
Attorneys for Plaintiffs